## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | |
|---|---|
| **AERO FULFILLMENT SERVICES** | ) **Case No.** _____ |
| **CORPORATION** | ) |
| **3900 Aero Drive** | ) **Judge** _____ |
| **Mason, Ohio 45040** | ) |
| | ) **COMPLAINT FOR BREACH OF** |
| **Plaintiff,** | ) **CONTRACT AND UNJUST** |
| | ) **ENRICHMENT**_____ |
| -v- | ) |
| | ) **(Jury Demand Endorsed Hereon)** |
| **STORD, LLC** | ) |
| **1175 Peachtree St. NE** | ) |
| **Atlanta, Georgia 30361** | ) |
| | ) |
| **Also Serve:** | ) |
| **Stord, LLC** | ) |
| **c/o Registered Agent** | ) |
| **Legalinc Corporate Services Inc.** | ) |
| **1870 The Exchange Suite 200 #44** | ) |
| **Atlanta, Georgia 30339** | ) |
| | ) |
| **Defendant.** | ) |

Plaintiff Aero Fulfillment Services Corporation, for its Complaint against Defendant Stord, LLC, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Aero Fulfillment Services Corporation ("Aero") is an Ohio corporation, with its principal place of business located at 3900 Aero Drive, Mason, Ohio 45040.

2.     Defendant Stord, LLC ("Stord") is a Georgia limited liability company with its principal place of business located at 1175 Peachtree Street NE, Atlanta, Georgia 30361.

3.     Jurisdiction and venue are proper in this Court pursuant to the Ohio Revised Code and the Ohio Rules of Civil Procedure, and pursuant to Section 10.3 of the Agreement between the parties as defined below.

## FACTUAL BACKGROUND

4.       Plaintiff Aero provides fulfillment services to several different companies located throughout the United States, including, but not limited to, warehousing, inventorying, packaging, and shipping.  In addition to fulfillment services, Aero provides IT solutions and integration services to meet the needs of its clients and their respective customers.

5.       Defendant Stord provides digital warehousing and distribution services to its clients to assist them in managing inventory.

6.       On October 16, 2018, Aero and Stord entered into a Master Service Agreement ("Agreement"), in which Aero agreed to warehouse, package, and ship certain products for Stord subject to the terms and conditions set forth therein.  A true and accurate copy of the Agreement is attached as **Exhibit A**.  The products that Aero agreed to warehouse, package, and ship for Stord included Tellworks Communications, LLC ("Tellworks") products.

7.       Pursuant to Article 5, Aero and Stord agreed that the Agreement would be "effective from the date hereof and shall continue for a period of three (3) years."  Thus, by it terms, the Agreement was set to expire on October 16, 2021.

8.       Section 2.1, together with Exhibit B to the Agreement, set forth the "Services Fees" to be charged to Stord for the services to be performed by Aero under the Agreement. Specifically, Section 2.1 provides in relevant part as follows:

> The service fees to be charged to Customer for the services to be performed by Aero under this Agreement are set forth in Exhibit "B" and in this Section 2.1. *Subject to Article 5, the parties agree that the Service Fees due to Aero for the Services provided during each calendar month*, for the month of the first receipt until two calendar months later, shall not be less than $5,000 (excluding freight charges), *and from the third calendar month after first receipt and after the date hereof, shall not be less than $10,000 (excluding freight charges) (the "Monthly Minimum"), and if the actual Service Fees incurred in any calendar month total less than the then-applicable Monthly Minimum, Customer*

> *shall be liable for the difference between the Monthly Minimum and the actual Service Fees incurred. If the Agreement is terminated by Aero without cause or by Customer with cause, Customer shall not be responsible for payment of any Monthly Minimum with respect to periods from and after such termination.*
>
> Notwithstanding the foregoing, Aero may adjust the Services Fees with respect to future renewal terms of the agreement from time to time with thirty (30) days written notice to Customer, subject to any limitations set forth in the Exhibits hereto. If Aero offers any new services or products to its Customers after the execution of this Agreement and Customer uses any such service or product, Aero shall provide, and Customer shall receive, any such service or product at Aero's then current fees and charges. *The provisions of this Section 2.1 shall survive any termination of this Agreement.*

(*See* Agreement, Section 2.1) (emphasis added).

9.  Aero specifically bargained for the three-year term, the required "Monthly Minimum" fees specified in Section 2.1, and the survival of the "Monthly Minimum" fees after termination because it invested significant time, money, and other resources in developing its relationship with Stord, preparing its warehouse space, and tailoring solutions to meet Stord's specific needs. These provisions are designed to protect Aero's significant upfront investment.

10. Section 6 governs "Termination" of the Agreement. Section 6.2 outlines the circumstances under which Stord can terminate the Agreement "at its option," providing as follows:

> 6.2 **Termination by Customer.** Despite anything to the contrary herein contained, Customer, at its option, may terminate this Agreement under the following circumstances:
>
> (a) Upon any increase in the Service Fees in excess of any increase expressly permitted pursuant to Exhibit "B" so long as Aero receives written notice of termination within ninety (90) days of the effective date of such increase;
>
> (b) If any Insolvency Event in Section 6.3 occurs with respect to Aero;

- 3 -

(c) If Aero materially breaches any provision of this Agreement and fails to cure such breach within thirty (30) days after written notice to Aero of the existence of the breach. Customer agrees that Aero shall have no liability for, nor be subject to termination as a result of, any breach that is caused, in whole or in part, by the act or omissions of the Tellworks Personnel;

(d) Upon termination or expiration of Customer's contract with Tellworks or any material decrease in services purchased by Tellworks thereunder; or

(e) For any reason, upon ninety (90) days' notice to Aero.

The rights of Customer to terminate under this Section 6.2 are cumulative and the existence of the right under any other provision or subsection is not exclusive of the right under any other provision or subsection.

(*See* Agreement, Section 6.2.)

11.    On or around August 22, 2019, well before the Agreement was set to expire, Stord informed Aero that Tellworks had terminated its agreement with Stord, and that Stord would be terminating the Agreement pursuant to Section 6.2(d).

12.    Aero accepted Stord's termination, but informed Stord that the termination was not "for cause" within the meaning of the Agreement.  Aero reminded Stord that it was contractually obligated to continue making the Monthly Minimum payments specified in Section 2.1 of the Agreement, and that these obligations survived the termination of the Agreement.

13.    After some back and forth, Stord changed its position on termination and stated that it was not terminating the Agreement and wanted it to continue.  Stord also acknowledged that it had an obligation to pay the $10,000 Monthly Minimum fees through the end of the contract term or through termination.  Stord represented that it planned to continue to utilize Aero's services and would pay the $10,000 Monthly Minimum fees through the end of the contract term.

14.     Based on these representations made by Stord, on or around August 27, 2019, Aero agreed to reinstate the Agreement and to continue providing the Services to Stord under the Agreement.

15.     In early November, Aero reached out to Stord to inquire about outstanding invoices for the services that were provided by Stord in September and October.

16.     On November 11, 2019, Stord informed Aero that it would be paying the outstanding invoices for September and October. And despite its previous representations, Stord also informed Aero that it would be terminating the Agreement effective immediately under Section 6.2(d) of the Agreement, and that it did not intend to pay the Monthly Minimum fees.

17.     Aero acknowledged the termination and attached a final close-out invoice related to payment of the remaining Monthly Minimum fees through the end of the original three year contract term (ending in October 2021). The invoice was dated October 31, 2019. A true and accurate copy of the close-out invoice is attached as **Exhibit B**.

18.     The October 31, 2019 invoice is now past due, and Stord has not yet made payment on the invoice.

**COUNT I**
**(BREACH OF CONTRACT)**

19.     Aero incorporates by reference the foregoing paragraphs as if fully restated herein.

20.     The Agreement between Aero and Stord is a valid and enforceable contract.

21.     Aero performed all of its obligations under the Agreement.

22.     Stord has breached its obligations under the Agreement by prematurely terminating the Agreement prior to its termination date and by failing to pay Aero the Monthly Minimum amounts due, as set forth on the October 31, 2019 invoice.

- 5 -

23.     As a result, Aero has been damaged in an amount in excess of $240,000, to be proven at the trial of this matter.

**COUNT II**
**(UNJUST ENRICHMENT)**

24.     Aero incorporates by reference the foregoing paragraphs as if fully restated herein.

25.     Stord will be unjustly enriched if it is not required to pay to Aero the Monthly Minimum amounts due, as set forth on the October 31, 2019 invoice.

**WHEREFORE**, Plaintiff Aero, respectfully requests that judgment be entered in its favor and against Stord, and that Aero be awarded damages in an amount in excess of $240,000.00 to be proven at trial, together with costs, reasonable attorney's fees, pre-judgment and post-judgment interest, and all further relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Melissa S. Matthews*
William N. Minor (0084153)
Melissa S. Matthews (0093352)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
wminor@kmklaw.com
mmatthews@kmklaw.com

*Attorneys for Plaintiff Aero Fulfillment Services Corporation*

- 6 -

## INSTRUCTION TO THE CLERK

Please serve the Defendant with the Summons and Complaint by certified mail, return receipt requested, at the addresses set forth in the caption of the Complaint.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable herein.


9648013.1

- 7 -

# EXHIBIT A

## MASTER SERVICE AGREEMENT

10/16/2018

THIS MASTER SERVICE AGREEMENT (the "Agreement") dated as of the _____ day of October, 2018 between AERO FULFILLMENT SERVICES CORPORATION, an Ohio corporation, having its principal place of business at 3900 Aero Drive, Mason, Ohio 45040 ("Aero") and STORD, LLC, a Georgia limited liability company having its principal place of business at 1175 Peachtree St. NE, Atlanta, GA 30361 ("Customer").

### Recitals

A.      Aero is in the fulfillment business, including, without limitation, the warehousing, inventorying, order processing, packaging, and shipping of products ("Material").

B.      Customer desires to retain the services of Aero to warehouse, package and ship its Material on the terms and conditions contained herein.

In consideration of the foregoing premises and of the mutual covenants and conditions hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

### Article 1
### Services

1.1      **Services.**  Aero shall perform for Customer the services described in Exhibit "A" on the terms and conditions set forth herein.  From time to time during the Term (as defined in Article 5) of this Agreement, Aero may revise Exhibit "A" to reflect any changes and or improvements in the specific services offered to Customer provided, however, that such revisions shall not take affect without the prior written consent of Customer.

1.2      **Liaison.**  Customer shall be assigned a client experience representative to serve as liaison between Aero and Customer.  The client experience representative shall be available to Customer five (5) days per week during normal business hours as needed.

1.3      **Tellworks Personnel**.  In partial consideration for the Service Fees (defined below) Aero agrees to permit two employees (the "Tellworks Personnel") of Tellworks Communications, LLC ("Tellworks") Tellworks to assist in providing the Services at Aero's facility in accordance with the following terms and conditions:

(a)      The Tellworks Personnel shall remain solely the employees of Tellworks, and Aero shall not have any obligation for their salary or benefits.

(b)      Customer shall ensure that the Tellworks Personnel shall comply with the requirements of Exhibit "A" together with all policies and procedures applicable to any Aero personnel or any other independent contractors working at Aero's facility, and will comply with all reasonable direction of Aero's Outbound Manager (collectively, "Aero Instructions").  Customer acknowledges that Aero may require Tellworks Personnel to execute an appropriate non-disclosure and non-solicitation agreement on a form provided by Aero and to commit, in writing, to comply with all Aero Instructions prior to entering Aero's facility.

(c)      Tellworks Personnel shall only have access to those areas of the Aero facility specified in Exhibit A or otherwise designated by Aero and necessary for the performance of the Services.  Aero may, at any time during the term of this Agreement and for any reason, prohibit either or both of the Tellworks Personnel from entering other areas of the Aero facility and may request that Customer and/or Tellworks replace the Tellworks Personnel for any lawful reason.

(d)      As between Aero and Customer, Customer shall be solely responsible for the acts and omissions of the Tellworks Personnel, and hereby agrees to indemnify, defend and hold

- 1 -

Aero harmless from and against any loss, claim, demand, liability, cost or expense (including reasonable attorney's fees and court costs) arising out of or relating to (i) any negligent act or omission of any Tellworks Personnel, (ii) any personal injury or property damaged caused by Tellworks Personnel's improper use or operation of any equipment owned or leased by Aero, (iii) any breach by Customer of this Section 1.3, or (iv) any claim that Aero is a joint-employer or co-employer of either of the Tellworks Personnel or that Aero is otherwise responsible to either of the Tellworks Personnel for any salary or benefits.

(e)     Customer shall maintain the following levels of insurance coverage during the term hereof: (i) comprehensive general liability coverage - $1,000,000 per occurrence and $2,000,000 in the aggregate, (ii) employer's liability coverage - $1,000,000 per occurrence and $2,000,000 in the aggregate, and (iii) workers compensation coverage – statutory levels.  Aero shall be named an additional insured on all such policies of insurance.

## Article 2
## Payment for Services

2.1     **Fees and Charges**.  The service fees to be charged to Customer for the services to be performed by Aero under this Agreement are set forth in Exhibit "B" and in this Section 2.1 (the "Service Fees").  Subject to Article 5, the parties agree that the Service Fees due to Aero for the Services provided during each calendar month, for the month of the first receipt until two calendar months later, shall not be less than $5,000 (excluding freight charges), and from the third calendar month after first receipt and after the date hereof, shall not be less than $10,000 (excluding freight charges) (the "Monthly Minimum"), and if the actual Service Fees incurred in any calendar month total less than the then-applicable Monthly Minimum, Customer shall be liable for the difference between the Monthly Minimum and the actual Service Fees incurred.  If the Agreement is terminated by Aero without cause or by Customer with cause, Customer shall not be responsible for payment of any Monthly Minimum with respect to periods from and after such termination.

Notwithstanding the foregoing, Aero may adjust the Services Fees with respect to future renewal terms of the agreement from time to time with thirty (30) days written notice to Customer, subject to any limitations set forth in the Exhibits hereto.  If Aero offers any new services or products to its Customers after the execution of this Agreement and Customer uses any such service or product, Aero shall provide, and Customer shall receive, any such service or product at Aero's then current fees and charges. The provisions of this Section 2.1 shall survive any termination of this Agreement.

2.2     **Billing and Payment**.  Customer agrees to pay all amounts due under this Agreement and not disputed by Customer in good faith, without set off or deduction, within thirty (30) days of the invoice date, to the address designated on the invoice.  Customer agrees to pay a monthly service charge of 1-1/2% on all amounts not disputed in good faith and not paid within thirty (30) days.

## Article 3
## Limitation of Liability

3.1     **Limitation on Liability; Duty**.  IN NO EVENT SHALL AERO BE LIABLE TO CUSTOMER FOR INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF ANTICIPATED PROFITS OR ECONOMIC LOSS, IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT.  CUSTOMER FURTHER AGREES THAT AERO'S LIABILITY UNDER THIS AGREEMENT TO CUSTOMER FOR DAMAGES, WHETHER IN CONTRACT, TORT OR OTHERWISE, SHALL NOT EXCEED THE AGGREGATE OF ONE (1) TIME THE ANNUAL AVERAGE AMOUNT PAID BY CUSTOMER FOR SERVICES UNDER THIS AGREEMENT IN THE IMMEDIATELY PRECEDING THREE (3) YEARS, OR SUCH SHORTER PERIOD OF TIME IF THE SERVICES PROVIDED HEREUNDER ARE FOR A PERIOD LESS THAN THREE (3) YEARS.  CUSTOMER

- 2 -

AGREES THAT THIS SECTION 3.1 SHALL CONSTITUTE NOTICE OF AERO'S LIMITATION OF LIABILITY.

### Article 4
### Disclaimer of Warranties

AERO SPECIFICALLY DISCLAIMS ALL WARRANTIES TO CUSTOMER OF ANY KIND, EXPRESS OR IMPLIED ARISING OUT OF OR RELATED TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES.  CUSTOMER HEREBY AGREES THAT AERO'S OBLIGATIONS TO IT ARE RELATED TO AERO PROVIDING SERVICES, THAT THIS AGREEMENT IS A SERVICE AGREEMENT FOR PURPOSES OF THE UNIFORM COMMERCIAL CODE AND THEREFORE THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE SHALL NOT APPLY TO THIS AGREEMENT.

### Article 5
### Term of Agreement

This Agreement is effective from the date hereof and shall continue for a period of three (3) years. This Agreement shall automatically renew on the terms and conditions hereof for additional one (1) year periods unless either party gives ninety (90) days' notice not to renew.  During the 90 day period after notice has been given not to renew, the Customer shall not permit the monthly Services Fees to decrease below the greater of (i) ninety percent (90%) of the previous year's annual monthly Services Fees or (ii) the Monthly Minimum.  Additionally, inventory and data will not be released until all current invoices have been paid.

### Article 6
### Termination

6.1    **Termination by Aero.**  Despite anything to the contrary herein contained, Aero, at its option, may terminate this Agreement under the following circumstances:

(a)    If Customer fails to pay any amount due under this Agreement within thirty (30) days after written notice to Customer of its failure to pay the amount;

(b)    If any Insolvency Event (as defined in Section 6.3) occurs with respect to Customer;

(c)    If Customer materially breaches any provision of this Agreement and fails to cure the breach within thirty (30) days after written notice to Customer of the existence         of     the breach; or

(d)    For any reason, upon ninety (90) days' notice to Customer.

The rights of Aero to terminate under this Section 6.1 are cumulative and the existence of the right under any provision or subsection is not exclusive of the right under any other provision or subsection.

6.2    **Termination by Customer.**  Despite anything to the contrary herein contained, Customer, at its option, may terminate this Agreement under the following circumstances:

(a)    Upon any increase in the Service Fees in excess of any increase expressly permitted pursuant to Exhibit "B" so long as Aero receives written notice of termination within ninety (90) days of the effective date of such increase;

- 3 -

(b)     If any Insolvency Event in Section 6.3 occurs with respect to Aero;

(c)     If Aero materially breaches any provision of this Agreement and fails to cure such breach within thirty (30) days after written notice to Aero of the existence of the breach. Customer agrees that Aero shall have no liability for, nor be subject to termination as a result of, any breach that is caused, in whole or in part, by the act or omissions of the Tellworks Personnel;

(d)     Upon termination or expiration of Customer's contract with Tellworks or any material decrease in services purchased by Tellworks thereunder; or

(e)     For any reason, upon ninety (90) days' notice to Aero.

The rights of Customer to terminate under this Section 6.2 are cumulative and the existence of the right under any other provision or subsection is not exclusive of the right under any other provision or subsection.

6.3     **Insolvency Event Defined.** As used herein, "Insolvency Event" occurs with respect to any party, which such party:

(a)     is dissolved or becomes insolvent;

(b)     makes a general assignment, arrangement or composition agreement with or for the benefit of its creditors; or

(c)     files a petition in bankruptcy or institutes any action under federal or state law for the relief of debtors or seeks or consents to the appointment of an administrator, receiver, custodian or similar official for the winding up of its business (or has such a petition or action filed against it and such petition, action or appointment is not dismissed or stayed within thirty (30) days).

### Article 7
### Indemnification

Aero shall indemnify, defend and hold harmless Customer from and against all third party claims, damages, losses, judgments and expenses, including reasonable attorney's fees, to the extent arising out of (i) Aero's negligence or willful misconduct, (ii) Aero's violation of law.  To the extent that the third party claims, damages, losses, judgments and expenses, including reasonable attorney's fees, are caused by Customer's negligence, the Customer shall fully indemnify, defend and hold harmless Aero.  If the third party claims, damages, losses, judgments and expenses, including reasonable attorney's fees, are the result of the negligence of both Customer and Aero, Customer and Aero shall be liable to the extent or degree of their respective negligence, as determined by mutual agreement of Customer and Aero or in the absence thereof, by adjudication of comparative negligence.

### Article 8
### Non-Discrimination

Aero shall not, in connection with the performance of services, discriminate against any employee or applicant for employment because of race, color, religion, sex, age, disability, or national origin or disability as defined by the Americans with Disabilities Act.  Aero agrees to comply with all applicable laws and ordinances relating thereto, and all applicable orders, rules and regulations issued pursuant thereto including, without limitation, Executive Order 11246 (as amended by Order 11375).  Aero further agrees to comply with Executive Order 11701 (Employment of Veterans) and 11758 (Employment of Handicapped).  If any of the aforementioned laws, ordinances, orders, rules or regulations require any particular provision, representation or agreement to be set forth in this Agreement, the same is hereby incorporated by reference as if it were fully written.

- 4 -

**Article 9**
**Insurance**

Aero shall maintain the following insurance, evidence of which shall be provided to Customer on reasonable request:

      (a)    Workers' compensation and disability benefits covering Aero's employees as required by law;

      (b)    Comprehensive general liability and employer's liability written on an occurrence basis and in the amount of $1,000,000 per occurrence and $1,000,000 aggregate; and

      (c)    Automobile liability in the amount of $1,000,000 combined single limit for bodily injury and property damage, and covering motor vehicles owned, non-owned, hired or otherwise used by Aero in connection with the performance of services.

Customer and Aero waive all rights, including but not limited to rights of subrogation, against each other and any of their respective agents, servants and independent contractors, for claims, injuries or damages covered by the parties' respective worker's compensation, general liability or automobile liability policies, except such rights as Customer and Aero may have to the proceeds of such policies. If any such policy requires an endorsement in order to provide continued coverage where there is a waiver of subrogation, the party which is the owner of such policy agrees to cause it to be so endorsed.

**Article 10**
**General**

    10.1    **Assignment.**  Except as otherwise provided herein, the rights and obligations of the parties under this Agreement are personal and not assignable, either voluntarily or by operation of law, without the prior written consent of the non-assigning party, which consent shall not be unreasonably withheld. Notwithstanding the preceding sentence, a party may assign this agreement without the other's consent to the assigning party's successor as part of a sale or other transfer of substantially all of the party's assets used in the business to which this agreement relates. Subject to the foregoing, all provisions contained in this Agreement shall extend to and be binding upon the parties hereto or their respective successors and permitted assigns.

    10.2    **Relationship of Parties.**  Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that neither the method of computing compensation nor any other provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of independent parties contracting for services. Neither Customer nor Aero has, and shall not hold itself out as having, any authority to enter into any contract or create any obligation or liability on behalf of, in the name of, or binding upon the other.

    10.3    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio. The parties hereto irrevocably consent to the personal jurisdiction of the federal and state courts having a *situs* in Hamilton County, Ohio. The parties hereto further agree that any suit, action or proceeding brought to interpret or enforce the terms and provisions of this Agreement shall be instituted in the federal and state courts having a *situs* in Hamilton County, Ohio.

    10.4    **Notice.**  All notices which either party may be required or desire to give to the other party shall be in writing and shall be given by personal service, telecopy, registered mail or certified mail (or its equivalent), or overnight courier to the other party at its respective address or telecopy telephone number set forth below. Mailed notices and notices by overnight courier shall be deemed to be given upon actual receipt by the party to be notified. Notices delivered by telecopy shall be confirmed in writing by overnight courier and shall be deemed to be given upon actual receipt by the party to be notified.

- 5 -

If to Aero:          Aero Fulfillment Services
                            3900 Aero Drive
                            Mason, Ohio 45040
                            Attention: John Gimpel
                            Fax: 513-459-3950

If to a Customer:    STORD, Inc
                            1175 Peachtree St. 10th Fl
                            Atlanta, GA 30361
                            Attn: Justin Turner
                            Ph: 256-651-8554

A party may change its address or addresses set forth above by giving the other party notice of the change in accordance with the provisions of this section.

10.5    **Headings.**  The section headings in this Agreement are solely for convenience and shall not be considered in its interpretation. The recitals set forth on the first page of this Agreement are incorporated into the body of the Agreement. The Exhibits referred to throughout this Agreement are attached to this Agreement and are incorporated into this Agreement. Unless the context clearly indicates, words used in the singular include the plural, words in the plural include the singular and the word "including" means "including but not limited to".

10.6    **Waiver.**  The failure of either party at any time to require performance by the other party of any provision of this Agreement shall not affect in any way the full right to require the performance at any subsequent time. The waiver by either party of a breach of any provision of this Agreement shall not be taken or held to be a waiver of the provision itself. Any course of performance shall not be deemed to amend or limit any provision of this Agreement.

10.7    **Force Majeure.**  If performance by Aero of any service or obligation under this Agreement, including warehousing, packaging or shipping, is prevented, restricted, delayed or interfered with by reason of labor disputes, strikes, acts of God, floods, lightning, severe weather, shortages of materials, rationing, utility or communication failures, failure or delay in receiving electronic data, earthquakes, war, revolution, civil commotion, acts of public enemies, blockade, embargo, or any law, order, proclamation, regulation, ordinance, demand or requirement having legal effect of any government or any judicial authority or representative of any such government, or any other act or omission whatsoever, whether similar or dissimilar to those referred to in this clause, which are beyond the reasonable control of Aero then Aero shall be excused from the performance to the extent of the prevention, restriction, delay or interference.

10.8    **Severability.**  If any provision of this Agreement is held invalid or unenforceable for any reason, the invalidity shall not affect the validity of the remaining provisions of this Agreement, and the parties shall substitute for the invalid provisions a valid provision which most closely approximates the intent and economic effect of the invalid provision.

10.9    **Entire Agreement.**  This Agreement, including Exhibits, sets forth all of the promises, agreements, conditions and understandings between the parties respecting the subject matter hereof and supersedes all negotiations, conversations, discussions, correspondence, memorandums and agreements between the parties concerning the subject matter. This Agreement may not be modified except by a writing signed by authorized representatives of both parties to this Agreement. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

10.10   **Scope of Activities Covered.**  This Agreement governs the provision of services by Aero to Customer and the parties related rights and obligations. Other than as expressly set forth in

- 6 -

Section 1.3 with respect to the Tellworks Personnel, nothing in this Agreement modifies the duties or obligations of Aero with respect to third parties or with respect to third-party materials stored by Aero.

**IN WITNESS WHEREOF,** the parties to this Agreement have caused it to be executed by their duly authorized officers as of the day and year first written above. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

AERO FULFILLMENT SERVICES CORPORATION

By: John T. Gimpel

Its: _____

STORD, LLC

By: Justin Turner

Its: _____

- 7 -

EXHIBIT "A"
SERVICES & ADDITIONAL TERMS

**General**

1. Tellworks/STORD will have two individuals doing work for T-Mobile (TMO), within the Aero facility.
2. The Tellworks/STORD personnel will be required to "Clock In" and "Clock Out" using Aero's Ultipro system
3. Connectivity to the STORD WMS or AIMS system requires no hardware, software, peripherals, or communication network from Aero.
4. STORD WMS or AIMS system will not be interfaced with Aero Navigator during initial setup
5. Aero will be provide user name and password or credentials to the Tellworks/STORD system
6. Tellworks/STORD personnel are required to maintain the warehouse areas & associated areas to enable the storage & handling of TMO product in a neat and orderly manner;
7. Aero building hours of operation are M-F 7:30am to 5pm excluding Aero holidays.
8. If workload is greater than the two Tellworks/STORD can manage Aero will provide additional staffing at a fee to support the additional need.
   o ONLY employees / personnel authorized by Aero will be allowed to work within the warehouse. Tellworks/STORD/TMO cannot utilize temporary staff or other labor for work on Aero premises.
   o Tellworks to train an Aero supervisor who may work in the account for a period of time, to Aero's discretion, to understand the processes/procedures of operating the account day to day.
      ▪ This person may assign Aero labor to the account to assist with Tellworks/STORD personnel absences (illness or other), or to assist with a high workload or volume

**Set-Ups/ Implementation**

1. Client will provide systems, technology, connections, training, inventory setup, business rules development necessary to execute fulfillment of orders

**Storage**

1. Ambient warehouse temperature.
2. Initial need of approximately 7,500 square feet for product (approximate 275 to 375 pallets)
3. 80% of storage will be standard conforming pallets (42" x 48" x 50" or smaller)
4. Dock and common area will be billed at a per square foot rate
5. Additional 372 pallets will be stocked before end of the year
6. Items will be assigned to Bulk storage locations (pallet racking & floor storage)
7. Pallets exceeding the Aero standard pallet dimensions, or pallets that will not fit into Aero racking due to weight, dimensions, or safety issues will be invoiced at oversize per square foot rate.
8. Pallets that are too small to fit in racking crossmember configuration will need to be repalletized by Tellworks/STORD personnel. Pallets, Wrap, and Banding subject to materials cost.
9. Tellworks/STORD system must be able to provide reporting for storage billing

**Receiving & Product Put Away (Inbound)**

1. TMO/Tellworks/STORD will be assigned one to two dock doors for receipt of product. Trailers or containers are to be live unloaded.
2. Trailers or containers requiring to be dropped must be coordinated through Aero receiving by Tellworks/STORD personnel
3. Tellworks/STORD personnel will receive, check/verify, and place to stock, TMO product in designated areas and racking assigned to the TMO account by Aero.

4. Tellworks/STORD personnel will enter inventory records into AIMS or STORD system for inventory record keeping, and retrieval of product for shipping
5. Conforming receipts
   a. Conforming pallets restricted to a height of 50" or less
      i. Pallets taller than 50" will need to be down stacked to accommodate racking restrictions or placed in oversize location, subject to additional storage charges or per square foot rate
6. All materials shall be delivered to warehouse will be properly marked and packaged for storage and safe handling.

**Inventory Management**

1. Inventory Management functions performed within Tellworks/STORD system and performed by Tellworks/STORD personnel
2. Tellworks/STORD personnel will provide services for fulfillment of TMO orders and communication with TMO Customer Service and other departments for service or inventory issues;
3. Aero assumes no liability for any inventory discrepancies, product availability, warehouse replenishment, missing or product damage issues;

**Order Handling & Processing (Outbound)**

1. Orders will be processed Monday through Friday excluding Aero Holidays by Tellworks/STORD personnel

**Equipment**

1. Tellworks/STORD personnel must be trained on proper use of the Material Handling Equipment
2. 1 - Forklift will be supplied by Aero for use.
   a. Additional equipment can be provided for an additional fee

**Materials**

1. Materials supplied by Aero will be quoted per item or billed back at cost plus.
   a. Materials cost subject to change without notice. From time to time Aero suppliers pass along increases based on market changes or raw materials or manufacturing increases.

**Freight**

1. Freight – Truck or LTL
   a. Provider Carrier Rates will be quoted based on actual services required and subject to market conditions and DOT Fuel Index.
2. Parcel Shipments on Aero's account
   a. Rebilled to Client at Aero's discounted base rates plus Management Fee as outlined in Exhibit B.
   b. Parcel Shipments billed on Customer's account subject to Child Meter Charges
   c. Carrier ancillary surcharges will be passed through at Aero cost (i.e. Fuel Surcharges, Home Delivery Surcharge, DAS, EDAS, signature capture, and others)
3. Any international orders will require information from Customer such as product harmonized codes, country of origin and price information loaded into the system in order for shipping to populate the Commercial Invoice or CN22 Label/Document
4. Declared Product Value on product with >$100.00 must be conveyed to Aero whom will provide to carrier if Customer wants to insure the product for more than $100.00. Additional freight or postage charges will apply
5. Customer / Contractor Pickup's occur during standard hours of operation



**EXHIBIT "B"**
**FEES AND CHARGES**

| Functional Activity | Pricing Method | Price | Assumption(s)/Notes |
|---|---|---|---|
| **Storage** | | | |
| **Conforming Pallet Storage** | Per Pallet per Month | $ 8.75 | *Estimated need of 800 - 1200 pallet positions. Pallets exceeding 42" x 48" x 50" dimensions will be billed for oversized pallets.* |
| **Oversized Pallets or Floor Storage** | Per ft² per month | $ 0.75 | *Pallets exceeding conforming dimensions will be billed at square foot rate or a multiple of conforming pallet storage per pallet rate depending on actual pallet dimensions* |
| **Account Management** | | | |
| **Account Management** | Per Hour | $ 16.00 | *Billed for every labor hour worked by the Tellworks/STORD/TMO employees* |
| **Aero Warehouse Labor** | | | |
| **Warehouse Associate** | Per Hour | $ 37.50 | *Aero employee provided to Tellworks/Stord to assist with higher demand/workload. Rate includes use of material handling equipment, excludes materials and freight.* |
| **Hourly Labor OT & Saturdays** | Per Hour | $ 56.00 | *A minimum of 1 Aero associate will be required to be on premise with Tellworks employees working afterhours or Saturday. This rate will be billed for each hour the Tellworks employees are in the building in addition to the Account Management Fee* |
| **Hourly Labor Sunday & Holidays** | Per Hour | $ 75.00 | *A minimum of 1 Aero associate will be required to be on premise with Tellworks employees working Sunday or Holiday. This rate will be billed for each hour the Tellworks employees are in the building in addition to the Account Management Fee* |
| **Saturday Building Opening Charge** | Per Occurrence | $ 250.00 | *One time charge for opening the building if Aero is not already operating a Saturday shift for other* |



*business*

| Sunday Building Opening Charge | Per Occurrence | $ | 400.00 | *One time charge for opening the building if Aero is not already operating a Sunday or Holiday shift for other business* |
| **Customer Service** | Per Hour | $ | 46.00 | |

**Miscellaneous / Materials**

| Per Pallet / Per Occurrence Disposal Fees | Per Occurrence | TBD | | *Depending on requirement for disposal, and request for certificate of destruction, etc. Aero will quote at time of occurrence/request dump/disposal fees/Labor* |
| **Materials Supplied by Aero** | | Cost Plus 15% | | |

**Freight & Postage**

| Parcel | Per Invoice | Cost Plus 10% | *Shipments Made on Aero's Discounted Rates.* |
| LTL, Truckload, or Ocean Freight, White Glove Delivery Service | Per Shipment | Quoted Per Move | *Shipments will be quoted based on unique attributes of the shipment and consignee* |

**Set-Up / Implementation**

| *Technology Setup / Integrations* | Per Hour | $ | 135.00 | *Setup, OMS/WMS/TMS- All creative and copy supplied by client.  Child Meter Setup, Building Connectors, API Development or Application Development,* |
| Project Management | Per Hour | $ | 85.00 | |

**Additional Assumptions:**

*Rates locked for 12 months then subject to annual CPI/GRI increase not to exceed 6.0% per year*

*Comprehensive/General liability insurance level of $1M per occurrence*

*Total liability capped at 1x previous 12 month spend*

*No incremental or specialized material handling equipment requirements, if required equipment billed at cost plus materials markup*

*Assumes all computer and scanning equipment provided and either segmented Aero network or provided hot spot*

*Any set up needs, estimates to be provided once final SOW agreed upon (i.e. wiring/fiber , installation of telecom or AP's, equipment)*

*Storage, Labor, Materials subject to hourly and minimum charges*

8709576.4

# ▼ HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | STORD + Aero Fulfillment (MSA) |
| **FILE NAME** | Master Service Ag...inal 10.15.18.doc |
| **DOCUMENT ID** | 91ce7e07fdfde1a63e45fd563cf985459b9f44e1 |
| **STATUS** | ◉ Completed |

## Document History

| | | |
|---|---|---|
| ↻ **SENT** | **10/16/2018** 15:12:26 UTC | Sent for signature to Justin Turner (justin.turner@stord.co) and John Gimpel (John.gimpel@aerofulfillment.com) from alex.kent@stord.co IP: 65.213.153.66 |
| ◉ **VIEWED** | **10/16/2018** 15:56:12 UTC | Viewed by Justin Turner (justin.turner@stord.co) IP: 65.213.153.66 |
| ✔ **SIGNED** | **10/16/2018** 15:59:11 UTC | Signed by Justin Turner (justin.turner@stord.co) IP: 65.213.153.66 |
| ◉ **VIEWED** | **10/17/2018** 16:13:39 UTC | Viewed by John Gimpel (john.gimpel@aerofulfillment.com) IP: 216.68.145.34 |
| ✔ **SIGNED** | **10/17/2018** 17:39:42 UTC | Signed by John Gimpel (john.gimpel@aerofulfillment.com) IP: 216.68.145.34 |
| ⊘ **COMPLETED** | **10/17/2018** 17:39:42 UTC | The document has been completed. |

# EXHIBIT B



## Fulfillment Services

800/225-7145 Tel
513/459-3900 Tel
513/459-3950 Fax

Remit To:
P.O. BOX 444
Kings Mill, OH 45034-0444

**Invoice**

| Invoice Number: |
| --- |
| 52391-2 |
| Invoice Date: |
| 10/31/2019 |

Invoice To:  STORD
ATTN: Justin Turner
1175 Peachtree Street NE
Atlanta GA 30361

| Client ID | Job Title | | Payment Terms |
| --- | --- | --- | --- |
| STR | Stord  - Termination Fee | | NET 30 |
| **Quantity** | **Customer P.O. No.** | **Complete Date** | **Aero Job No.** |
| SEE BELOW | N/A | 10/31/2019 | 52391 |
| | | | **Amount** |

| Quantity | DESCRIPTION | Unit Cost | UOM | Amount |
| --- | --- | --- | --- | --- |
| | November 2019 - October 2021 Contract Termination Fee | | | |
| 24 | Monthly Minimum | 10,000.00 | Monthly | 240,000.00 |

| | | |
| --- | --- | --- |
| Subtotal | $ | 240,000.00 |
| Postage Paid | $ | - |
| Total | $ | 240,000.00 |

Page 1 of 1